UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUAN ESPINOZA,

      Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

No.  2:25-cv-01238-EFB (SS)

ORDER

Plaintiff complaint seeks judicial review of a final decision of the Commissioner of Social Security (SSI) denying his application for Disabled Adult Child's benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act.  ECF No. 1.  Pending before the court are the parties' cross-motions for summary judgment.  ECF Nos. 9, 11.[1]  For the reasons provided below, plaintiff's motion is denied and defendant's is granted.

**I.    Background**

**A. Current Proceedings**

On December 30, 2019,[2] plaintiff filed an application for SSI disability benefits under

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1).  ECF No. 14.

[2] Elsewhere, the record indicates that this application was submitted to the Social Security Administration on December 9, 2019.  *See* AR 181, 192.  The application itself bears the date December 30, 2019.  Nonetheless, the distinction appears immaterial to the issues raised in the pending motions.

1

Title XVI of the Social Security Act.  Administrative Record (AR) 336-45.[3]   He alleged disability due to post-traumatic stress disorder, autism, depression, social anxiety disorder, chronic pain, and intellectual development disorder.  AR 373.  Plaintiff's application was denied on March 5, 2020, AR 123-31, and his request for reconsideration was denied on July 8, 2020.  AR 157; *see* AR 143-55.

While his request for reconsideration was pending, plaintiff filed an additional application for Social Security benefits.  In this application, filed on May 20, 2020,[4] plaintiff sought child disability benefits under Title II of the Social Security Act, claiming post-traumatic stress disorder, autism, depression, social anxiety disorder, chronic pain, and intellectual development disorder since birth.  AR 132.  This application was denied at the initial level and, on July 8, 2020, on reconsideration.  AR 131-43, 156.

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) on both adverse decisions.  AR 178-96.  The ALJ held a hearing on July 22, 2021, at which plaintiff testified.  AR 50-73, 181.  By written decision on August 27, 2021, the ALJ found plaintiff not disabled relative to his claim for SSI disability benefits and to his claim for child's insurance benefits based on disability.  AR 192.

Plaintiff sought review of this decision by the Appeals Council.  AR 285-87.  On August 9, 2022, the Appeals Council granted review, vacated the ALJ's decision, and remanded the matter for additional findings.  AR 197-201.  The Appeals Council directed the ALJ to,

- Obtain additional evidence concerning the claimant's impairment(s) in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512, 416.912).
- Consider whether the claimant rebuts the presumption of continuing nondisability in accordance with Social Security Acquiescence Ruling 97-4(9)

---

[3] Defendant lodged the administrative record on July 17, 2025.  ECF No. 7.

[4] This application is not in the Administrative Record, but the record includes a denial notice informing plaintiff that a claim for Social Security Child's Insurance Benefits based on disability beginning prior to the attainment of age 22 had been denied on July 8, 2020.  AR 210.  Likewise, the hearing decision denying plaintiff's claims indicates that plaintiff filed a Title II application for Child Insurance Benefits based on disability.  AR 17-18; *see also* AR 181.

2

[relative to the claim of child disability benefits.]
● Adjudicate the claim for child disability benefits in accordance with 20 CFR 404.350(a)(5).

AR 198-99.

The ALJ held a new hearing on February 6, 2024, pursuant to the Appeals Council's remand order. AR 34-49, 328. On April 26, 2024, he issued a decision finding plaintiff not disabled for the purposes of both child disability benefits and disability insurance benefits. AR 14-28. Plaintiff again sought review before the Appeals Council, which denied review on March 13, 2025. AR 1-6. Plaintiff initiated this action April 30, 2025. ECF No. 1.

**B. Prior Administrative Proceedings**

Prior to filing the claims for benefits that form the basis of the instant suit, plaintiff had twice sought SSI based on disability benefits under Title XVI. He first filed an application for SSI on September 19, 2011, and that application was denied at the initial and reconsideration levels. AR 161. He requested and received a hearing before an ALJ, which occurred on February 19, 2013, where he was represented by counsel. AR 90-111, 161. On March 25, 2013, the ALJ issued a decision finding plaintiff not disabled since September 19, 2011, the date of his application. AR 170. Plaintiff did not appeal or seek review of this decision. *See* AR 112.

On June 29, 2016, plaintiff filed another application for SSI disability benefits. AR 112, 181. That claim was also denied initially and on reconsideration. AR 112. Plaintiff was granted a hearing before an ALJ, which was held on April 3, 2018, at which plaintiff was again represented by counsel. AR 74-78, 112. On July 27, 2018, the ALJ issued a decision in which he found plaintiff not disabled, since June 29, 2016. AR 122; *see also* AR 181. Plaintiff did not appeal or seek review of that decision. AR 17, 181.

**II.    Legal Standard**

**A. The Disability Standard**

In plaintiff's complaint, he seeks review of both the Commissioner's denial of his application for child disability benefits under Title II and the denial of his application for supplemental security income under Title XVI, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3),

ECF No. 1, and asserts the same in his motion for summary judgment. ECF No. 9 at 4. Notwithstanding this, in his argument in support of his motion for summary judgment, plaintiff only raises two assignments of error, both of which assert errors in the ALJ's findings underlying the denial of the Title XVI application; plaintiff argues no errors arising from the ALJ's findings or reasoning relative to his claim for entitlement to benefits under Title II. *See* ECF No. 9 at 5-13 (citing AR 24-26); *see* AR 24-26 (ALJ reporting his findings on plaintiff's residual functional capacity relative to his Title XVI application).

To qualify for disability insurance benefits under Title XVI of the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that

---

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

4

exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). At each of these five steps, "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In steps one through four, the burden of proof is on the claimant. *Ford*, 950 F.3d at 1148. A claimant establishes a prima facie case of qualifying disability once he has carried the burden of proof from step one through step four. *Ibid*.

Before making the step four determination, the ALJ first must determine the claimant's RFC. *Batson*, 359 F.3d at 1194; *see* 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a). A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. § 416.927(d) (RFC is not a medical opinion); 20 C.F.R. § 416.946 (identifying the ALJ as responsible for determining RFC); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 416.920(g); *Batson*, 359 F.3d at 1194. If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled. *Ibid.*

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

5

The court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart (Thomas)*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co. (CalPortland)*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless, *Stout*, 454 F.3d at 1055-56, and the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

In conducting its analysis, the "reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The court may not affirm the ALJ on a ground upon which she did not rely; rather, the court may review only the reasons stated by the ALJ in her decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Further, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

III.    The ALJ's Findings of Fact and Conclusions of Law

In his April 26, 2024 decision, the ALJ found plaintiff not disabled on his applications for benefits under both Title II and Title XVI. The ALJ issued combined findings addressing both applications, as follows:

////

1. Born on January 7, 1986, the claimant attained the age 22 as of January 7, 2008 (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity during the relevant periods (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.) (Exhibits C2D -C14D).

3. Prior to the date the claimant attained age 22, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (20 CFR 404.1520(c)).

4. As to the Title XVI application, the claimant has the following severe impairments: posttraumatic stress disorder; anxiety; and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks using judgment limited to simple work-related decisions. The claimant can interact with coworkers and the public occasionally.

7. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on January 7, 1986. The claimant was 33 years old, which is defined as a younger individual age 18-49, on the application file date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a)

12. The claimant has not been under a disability, as defined in the Social Security Act, during the relevant periods (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

AR 20-28.

## IV.     Analysis

Plaintiff raises two issues on review.  First, plaintiff argues that, relative to his claim for benefits under Title XVI, the ALJ erred in his analysis of plaintiff's RFC insofar as he discounted the impairments relating to plaintiff's mental dysfunction.  ECF No. 9 at 5-9.  Second, plaintiff asserts the ALJ erred in his evaluation of the medical source opinion of Johnathan Hudson, PhD., when determining plaintiff's RFC relative to his claim for Title XVI benefits.  ECF No. 9 at 10-13.  The court concludes plaintiff has not shown reversal is merited.

### A.  Consideration of Symptoms of Mental Dysfunction

Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because the ALJ, without specific, clear, and convincing reasons, discounted plaintiff's testimony describing the severity and extent of his symptoms of mental dysfunction.  ECF No. 9 at 5-9; ECF No. 12 at 1.  Specifically, plaintiff argues the record does not support the ALJ's characterization of plaintiff's "mental symptoms [as] 'mild' and 'managed with medical treatment.'"  ECF No. 9 at 6 (quoting AR 24).  He indicates that the evidence supported a finding that he could not adhere to a work schedule, including limitations on breaks; could not adhere to standards of performance required by a workplace; and could not manage the stress and social demands of a work environment.  ECF No. 9 at 9.  Upon review of the record, the court concludes the ALJ's determination was supported by substantial evidence, *see Biestek*, 587 U.S. at 99, and that the ALJ provided adequate reasons for discounting portions of plaintiff's testimony in making that determination.  *See Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

When determining a plaintiff's residual functioning capacity, the ALJ must consider the plaintiff's testimony describing their symptoms and engage in a two-step inquiry to determine whether such testimony is credible. *Garrison*, 759 F.3d at 1014-15. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Lingenfelter,* 504 F.3d at 1035-36 (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted)). If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's

testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (quoting *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)); *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006).

Here, in considering plaintiff's claim for benefits under Title XVI, the ALJ found that plaintiff had the severe impairments of post-traumatic stress disorder, depressive disorder, and anxiety, but rejected in part plaintiff's statements considering the intensity, persistence, and limiting effect of the symptoms of these impairments.  AR 21.  Plaintiff testified and represented in his function report that he could not work at all because he could barely care for himself, including frequently forgetting to take medication; his anxiety rendered it difficult to be around other people and accept criticism; and he had difficulty following directions, understanding things, and performing tasks in a timely way.  AR 24.  The ALJ partially rejected this testimony, finding that, although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record" because these statements were

> not consistent and do not support the existence of limitations greater than those set forth in the residual functional capacity above because the claimant's medical evidence of record indicates rather mild mental symptoms, which were managed with medical treatment. In addition, the claimant's allegations of disability are not consistent with his articulate testified (*sic*) about his variety of activities, including search for work, visiting with friends, cleaning house, mowing the lawn, taking the bus, taking out the trash, shopping, doing the laundry, reading, gaming, going to the park, and caring for dogs, and more.

AR 24-25.  These impairments, per the ALJ, justified an RFC finding that plaintiff could perform a full range of work at all exertional levels, but he was "limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks using judgment limited to simple work-related decisions" and can only "interact with coworkers and the public occasionally."  AR 23.

The ALJ's partial rejection of plaintiff's testimony was supported by specific, clear, and convincing reasons.  *See Garrison*, 759 F.3d at 1014-15.  First, the reasons provided by the ALJ were not too vague to satisfy this standard, as plaintiff argues.  *See* ECF No. 9 at 6-8.  An ALJ's

discussion of the reasons for rejecting, or partially rejecting, a claimant's testimony is sufficiently specific where the ALJ's findings contain enough detail "to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony," *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002), and where "a reviewing court [is] not . . . forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell,* 947 F.2d at 345-46; *see, e.g., Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996), *superseded by statute on other grounds*. Under this standard, the ALJ's reasons for partially rejecting plaintiff's testimony were sufficiently specific. In explaining why he did not fully credit plaintiff's description of the intensity, persistence, and limiting effect of his impairments, the ALJ detailed the medical evidence in the record tending to contradict plaintiff's testimony, including the results of mental status examinations and clinicians' contemporaneous records of plaintiff's reports of his own functioning, including the efficacy of his medication. AR 25-26. The ALJ also discussed the medical opinion evidence and prior administrative findings in the record, including the weight he gave each based on its supportability and consistency. AR 26. The ALJ also identified that he considered a Third-Party Function Report by plaintiff's father, and considered plaintiff's testimony at the July 2021 and February 2024 hearings. AR 24. Taken together, these findings satisfy the requirement that the ALJ explain "specific[ly]" why he rejected in part plaintiff's testimony, *see Garrison*, 759 F.3d at 1014-15, so as to enable the court to effectuate a meaningful review of the ALJ's disability determination and underlying findings. *See Bunnell,* 947 F.2d at 345-46; *see, e.g.*, *Lester*, 81 F.3d at 834 (holding ALJ's reasons for rejecting claimant's testimony not sufficiently specific the ALJ had simply made a "general statement that the claimant's testimony was unbelievable" but "did not provide any specific reasons for her disbelief other than a lack of objective evidence"); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (holding that ALJ was not sufficiently specific in partially rejecting claimant's allegations of symptoms where ALJ simply "repeated that there was little or nothing in the record to support" the allegations); *Varney v. Sec'y of Health & Hum. Servs.*, 846 F.2d 581, 584 (9th Cir.), *on reh'g,* 859 F.2d 1396 (9th Cir. 1988) (same, where ALJ simply stated in one sentence that plaintiff's allegations of her symptoms were unsupported by the objective medical

evidence).

Second, the reasons the ALJ provided were sufficiently convincing to justify his partial rejection of plaintiff's testimony and his finding that, instead, the record reflected that plaintiff possessed "rather mild mental symptoms, which were managed with medical treatment." *See* AR 24. The record supports the ALJ's findings in this regard. *See Ford*, 950 F.3d at 1154. The ALJ observed that, in contrast to plaintiff's testimony, his treating clinician recorded in psychotherapy progress that plaintiff consistently presented, during the relevant period, with good attention and concentration, unremarkable flow of thought, good insight and judgment, appropriate dress, unremarkable motor activity, euthymic mood, appropriate affect, oriented, intact memory, appropriate thought content, unremarkable perception, and normal speech. AR 25 (citing AR 658, 662-72, 674, 676-79). The ALJ also observed that, in May 2018, plaintiff had recently started the medication Geodon and reported to his treating clinician that he was "very happy with the medication and says that it works well for him." AR 25 (citing AR 688). Plaintiff's medical records also showed that, approximately one year later, he returned to regular therapy; over the next several months, his treating clinician again reported unremarkable mental status examination results. AR 25 (citing AR 658, 662-72, 674, 679). The ALJ also observed that plaintiff's treating clinician reported, throughout 2020, that plaintiff continued to present with unremarkable mental status examination results and reported taking his prescribed medication. AR 25 (citing AR 744, 746, 748, 750, 752, 754).

The ALJ observed that in January 2021 plaintiff was placed on an involuntary psychiatric hold, reporting at the time to treatment providers that he had not taken his psychiatric medication for several days. AR 25 (citing AR 775-76). After this, plaintiff returned to therapy and reported that he had resumed his medication, stating on multiple occasions that he felt great while on his medication. AR 25-26 (citing AR 728, 729, 731, 732, 734, 740). During these sessions, his clinician reported unremarkable results from mental status assessments. *Id*. Plaintiff's medical records indicate that he again sought services multiple times in 2023, at which point he reported having ceased counseling and mental health medication. AR 25-26 (citing AR 793, 795, 798). Despite this, however, plaintiff reported experiencing no symptoms of depression. AR 26 (citing

AR 793).

In light of this, the record supports the ALJ's finding that plaintiff's testimony about the intensity, duration, and limiting effect of his impairments was contradicted, to some extent, by the objective medical evidence. *See* AR 25. It is reasonable for an ALJ to reject a claimant's testimony to the extent it conflicts with objective evidence, including the medical evidence in the record. *See, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 672-73 (9th Cir. 2012) (holding ALJ was reasonable in relying on objective medical evidence of claimant's functioning over claimant's subjective testimony); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (holding ALJ reasonably relied on physician's assessment of claimant's lifting capability in lieu of claimant's self-report, as "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (affirming an ALJ's rejection of claimant's allegations of disabling pain, as they conflicted with records from her physical examinations). Plaintiff argues that the ALJ's findings were unsupported insofar that they oversimplified the nature of plaintiff's impairments by failing to account for the waxing and waning nature of plaintiff's symptoms. *See* ECF No. 9 at 7 (citing *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014)). The record, however, contradicts such a characterization.

In *Garrison*, 759 F.3d at 1017, the Court of Appeals held that, when a claimant claims disability from a mental health impairment, "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working" because mental health symptoms may "wax and wane in the course of treatment." There, the Court of Appeals concluded the ALJ "improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit" the claimant, thereby failing to present clear and convincing reasons to discredit the claimant's testimony. *Garrison*, 759 F.3d at 1018. Here, in contrast, the record does not support the conclusion that the ALJ ignored waxing and waning progress over the course of plaintiff's treatment and cherry-picked particular instances of plaintiff's improved functioning on which to basis his RFC determination. Rather, the ALJ accurately depicted the

12

record as consistently demonstrating, over the relevant time period, that plaintiff repeatedly presented unremarkably in his mental status examinations, repeatedly reported success with his prescribed medication regime, and apparently satisfied his clinicians with the efficacy of his therapy and medication regime. Although plaintiff experienced decompensation in January 2021 leading to his psychiatric hold, he reported to his treating clinician that he had been unmedicated at the time and would take steps to resume his medication. *See* AR 775-77. Overall, the ALJ's assessment of plaintiff's functioning, as depicted in the medical record before the ALJ, was accurate and did not improperly overstate the evidence of plaintiff's level of functioning. *See Garrison*, 759 F.3d at 1018. Plaintiff has not shown that the ALJ's decision lacked clear and convincing reasons to discredit plaintiff's testimony in this regard.

Finally, to the extent the ALJ's determination was based on evidence of plaintiff's daily functioning, it was proper. In addition to being contradicted by the medical evidence in the record, the ALJ concluded that the extent of plaintiff's claimed impairments was also contradicted by evidence of his "variety of activities, including search for work, visiting with friends, cleaning house, mowing the lawn, taking the bus, taking out the trash, shopping, doing the laundry, reading, gaming, going to the park, and caring for dogs, and more." AR 25-26. The ALJ's depiction of the record in this regard is accurate. *See* AR 55, 60-62. It was reasonable for the ALJ to partially discredit plaintiff's testimony indicating that he could perform no work due to his cognitive limits and inability to manage his feelings of anxiety in social situations, *see* AR 24, in light of other data, namely, plaintiff's more specific testimony identifying particular tasks he regularly undertook. *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (holding ALJ reasonably discounted claimant's testimony concerning the alleged severity of her limitations where that testimony was inconsistent with evidence of claimant's daily activities); *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007) (the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms" in determining whether claimant's claims are credible). For all of these reasons, plaintiff fails to show that the ALJ's RFC determination lacked substantial evidence nor that the ALJ failed to provide clear and convincing reasons to partially discount plaintiff's testimony when determining the RFC.

**B.  Evaluation of Medical Source Opinion of Johnathan Hudson, PhD.**

Plaintiff also argues that the ALJ's RFC determination was flawed by the ALJ's failure to consider the January 28, 2018 medical source opinion of Johnathan Hudson, PhD.  ECF No. 9 at 10-13.  Plaintiff has not shown entitlement to relief on this basis.

Among the materials in the record before the ALJ was a medical source opinion authored by Hudson on January 28, 2018.  AR 587-600.  The ALJ stated he "considered" this opinion, but because it was "issued years prior to the Title XVI relevant period" this opinion was neither inherently valuable nor persuasive and, thus, the ALJ would not articulate his assessment of it.  AR 26-27 (citing 20 CFR 416.920b(c)).

The ALJ erred in concluding that, because Dr. Hudson's opinion predated the date of onset of disability, it was neither inherently valuable nor persuasive within the meaning of the regulations, but this error was harmless.  Under 20 C.F.R. § 416.920b(c), the ALJ "will not provide any analysis about how [he] considered . . . evidence in [his] determination or decision" if that evidence was "inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act."  The regulation enumerates three forms of evidence that meet this standard: decisions by other governmental agencies and nongovernmental entities, state agency disability examiner findings, and statements on issues reserved to the Commissioner; on this final form, the regulations identify nine types of statements that are encompassed.  20 C.F.R. § 416.920b(c)(1)-(3).  None of these forms of evidence are implicated by the medical source opinion of Dr. Hudson.  *See* AR 587-600.  The regulations do not provide that evidence is inherently neither valuable nor persuasive if it was created before the claimed date of the onset of disability.  *See generally* 20 C.F.R. § 416.920b(c).  As such, the ALJ erred in concluding that he did not have to articulate his assessment of Dr. Hudson's opinion pursuant to 20 C.F.R. § 416.920b(c).[6]

////

------

[6] The ALJ also cited to 20 CFR 404.1520b, which appears errant, given that plaintiff's claim was for supplemental security income under Title XVI.  *See generally* 20 CFR §§ 404.1, 416.101.

Nonetheless, the error is harmless.  Dr. Hudson's January 2018 report had been submitted to the Commissioner in one of plaintiff's prior applications for Title XVI benefits, and a prior ALJ had considered it and had made findings concerning its probity.  AR 112, 121.  In his July 2018 decision, the prior ALJ found:

> Jonathan Hudson, PhD. opined in January 2018 that the claimant requires substantial support in social communication and restrictive interest and repetitive behavior; has limitations in areas of mental functioning indicating the existence of severe mental impairments; has an inability to function independently outside the home; would be absent about 4 days a month; and would need directions to keep on task (Ex. B9F).  However, the opinion was given less than a month after seeing the claimant for about 2 weeks.  Moreover, the opinion is inconsistent with the longitudinal medical evidence of the record as discussed above in evaluating the DDS opinion.  He had an episode of increase symptoms in mid-2015, but he was not taking psychiatric medications, he had experienced recent domestic issues at the time, his symptoms improved quickly, and on discharged, he had a normal mental status examination (B7F).  Accordingly, little weight is given to Dr. Hudson's opinion.

AR 121.  As noted, the ALJ found that plaintiff was not disabled, within the meaning of Title XVI, from June 29, 2016 through July 27, 2018.  AR 122.

The 2018 finding of non-disability, and the ALJ's findings intrinsic to that determination, have a res judicata effect in subsequent applications for disability, including that giving rise to the instant suit.  *See Chavez v. Bowen*, 844 F.2d 691, 694 (9th Cir. 1988); *Lyle v. Sec'y of Health & Hum. Servs.*, 700 F.2d 566, 568-69 (9th Cir. 1983).  In *Chavez*, the Court of Appeals explained that, where a claimant has filed multiple, successive applications for benefits, "[p]rinciples of res judicata made binding the first judge's determinations that the claimant had a residual functional capacity of light work, was of limited education, and was skilled or semi-skilled," such that, if a subsequent ALJ "fail[s] to afford preclusive effect to the first judge's determinations . . . his decision [is] not supported by substantial evidence."  *Id*.; *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008).  This principle, however, does not apply where (1) the claimant seeks to present "new and material evidence" in the subsequent proceeding that had not been presented to the first ALJ, *Chavez*, 844 F.2d at 694, or (2) if the claimant was unrepresented by counsel at the first proceeding.  *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988).

Here, plaintiff does not dispute that the January 23, 2018 medical source opinion authored by Dr. Jonathan Hudson that he urged the ALJ to consider in the instant Title XVI claim is the same opinion that the prior ALJ had considered in the 2018 proceedings. *See* ECF No. 9 at 10; ECF No. 12 at 1-2; *compare* AR 121 *with* AR 587-600. As such, it does not constitute "new" material that was unconsidered in the prior proceeding. *See Chavez*, 844 F.2d at 694. The record also establishes that plaintiff had been represented by counsel in the 2018 proceeding. AR 112. Accordingly, plaintiff presents no reason why the ALJ, in evaluating the Title XVI claim that gives rise to the instant suit, would not have given preclusive effect to the prior ALJ's findings with regard to the probity of Dr. Hudson's opinion; indeed, under *Chavez* and related authority, the ALJ would have erred had he not given preclusive effect to the prior ALJ's findings as to the supportability and consistency of Dr. Hudson's 2018 opinion. *See Stubbs-Danielson*, 539 F.3d at 1173; *Chavez*, 844 F.2d at 694. For this reason, the ALJ's error in omitting articulation his assessment of Dr. Hudson's opinion, AR 26-27, was harmless, as the prior ALJ had previously articulated that Dr. Hudson's opinion was due little weight because it was not consistent with other medical evidence and supported only minimally by Dr. Hudson's then-brief treatment of plaintiff, AR 121, and the subsequent ALJ was required, under principles of res judicata, to refrain from revisiting this finding when determining plaintiff's RFC. *See Stubbs-Danielson*, 539 F.3d at 1173; *Chavez*, 844 F.2d at 694; *Lyle*, 700 F.2d at 568-69. Plaintiff therefore has not shown that reversal and remand is merited on this basis.

## V.   Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 9) is DENIED;

2. Defendant's cross-motion for summary judgment (ECF No. 11) is GRANTED;

3. The Clerk of the Court shall enter judgment for defendant and close this case.

Dated: February 26, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

16